Good morning. May it please the court. Tylee Tan of Fenwick and West on behalf of the appellant Christian Williams. I would like to reserve two minutes of my time for rebuttal. This morning I will focus on two points that we discussed in our brief. First, the district court erred in failing to consider Mr. Williams' sworn declaration and exhibits. And second, summary judgment on Mr. Williams' right to be kept separate from and treated better than criminal inmates at the jail. The district court erred in failing to consider Mr. Williams' sworn declaration and exhibits. Mr. Williams alerted the court to these documents. The court acknowledged that the declaration and the exhibits were incorporated in his verified complaint. Mr. Williams also incorporated by reference these materials in his opposition for summary judgment. However, it is evident that the district court did not consider these materials. First, the order stated directly that the court would not consider the exhibits. And this was based on the court's erroneous belief that the exhibits were merely appended to a complaint that's full of conclusory allegations that would require the court to pick through the exhibits to find the facts that Mr. Williams was relying on. His declaration and facts sets forth in detail the very facts that he was relying on. Second, in discussing what evidence Mr. Williams had presented. Kennedy, the court also said, though, that in looking at them to the extent the court did consider them, that he wasn't naming, that it didn't concern the officers that were parties to, or the guards that were parties to the litigation. I think what he said is they were accusing the wrong people relevant to what the complaint was about. Well, the Court said that the complaint didn't name the specific deputies and staff that violated Mr. Williams' rights, but his declaration, in fact, lists the names and the badge numbers where, you know, he had that information. He listed it in his declaration. And also the exhibits also demonstrate that. So the kids, as I read his complaint and his declaration, his case is against the counties on a deliberate indifference failure to train through policy. Is that correct? Yes. Well, he proceeds on three different theories. For some of his claims, he, you know, he alleges that the district court, excuse me, that the county had unconstitutional policies. For other claims, they were based on a custom that was so widespread and pervasive at the jail that it constitutes how the jail does things. And he also alleges that even if there were a constitutional policy, that there is evidence to show that there was a failure to adequately train and supervise the county's employees. Had the Court properly reviewed all the evidence before it, it would have found that Mr. Williams did provide sufficient evidence to defeat summary judgment. How about for the supervisor liability for Sheriff Horsley? Now, I looked through the materials. Was there any evidence that he knew about these issues and had been specifically informed himself personally? I saw some e-mail traffic, but not where there was evidence that Sheriff Horsley had been informed. Well, there Mr. Williams does present evidence that he had filed grievances addressed specifically to the sheriff, notifying him of the fact that he, you know, his rights as an SVP were being violated at the jail. He also, when he was released from the jail and ---- Is that enough to have a notice that was addressed to someone, but no evidence that they actually received it? I think in Baca, Star v. Baca, there was evidence that the sheriff actually had knowledge of the issues. Well, I think that we're talking about an incarcerated person that's under detention. I think he did the best he can in filing his grievances, you know, addressed to the sheriff. He also filed claims with the board of supervisors, and they claim they reviewed his claims, but I would assume that would entail also working with the jail and working with the sheriff to look into, if they did, look into these, into these, the claims that Mr. Williams had. And also, this case right now is on a summary judgment stage, and it is the athletes that have moved for summary judgment, and so as a nonmoving party, Mr. Williams is entitled for all the evidence to be viewed in the light most favorable to him. And the only evidence that's in here is that he did file claims with the board of supervisors, and he also filed grievances addressed to the sheriff. I think taking with that evidence on this stage of the proceeding, you know, he's entitled to the inference that the sheriff was on notice. We discussed in our brief athlete's liability for a number of violations, but today I'm going to focus on Mr. Williams's rights under the 14th Amendment as an SVP, also as a civil detainee, to reasonably safe conditions of confinement, and also more considerate treatment than criminal inmates. Aptly's mere allegation that the jail had a constitutional policy for housing and treating SVPs simply is insufficient to entitle them to summary judgment when there is extensive evidence in the record that's inconsistent with such a policy. And one of the one piece of this evidence is the 2005 email between Assistant Sheriff Trindo and the classification sergeant Titus, where that email admits that the jail did not implement a policy that complied with Jones v. Delanus, and that the practice there was to basically treat civil detainees the same as criminal inmates when they're housed in the main jail. That email also stated that prior to Jones, the practice was to house criminal – was to house SVPs in the general housing unit, although in their own cells, and that there was – and didn't state any practice of affording them more considerate treatment. This evidence alone creates a genuine dispute in fact as to whether the county had a constitutional policy for the treatment of SVPs. And tellingly, Aptly's do not offer any explanation why this evidence doesn't defeat summary judgment. Mr. Williams also submitted many examples of treatment that is fundamentally inconsistent – that is fundamentally inconsistent with there being a policy. As his declaration sets forth in a lot of detail, this is not an isolated exception to the policy that's claimed by the county. On numerous instances, he was locked in cells with one or more criminal inmates. He was, you know, on a weekly basis, he was heard into the jail's common areas with criminal inmates, and he's – he also said that he and other civil detainees were treated the same or worse than criminal inmates. They were oftentimes locked in their cells for 23 or 24 hours a day. They were given less recreational and exercise time. Can I ask you a question because your time is running down a bit? Do you rely on Redmond? You answered the question about the knowledge of the sheriff in this case, but under Redmond, where there was no knowledge shown on the part of the sheriff there, nonetheless, we went on to talk about direct liability because the sheriffs are supervisors of the jails. Are you trying to invoke that, and if so, what's the basis for it? Yes, we are relying on Redmond. Redmond did hold that actual knowledge is not even necessary for supervisory liability and that this doesn't convert supervisory liability claims into one of respondeat superior because it's a recognition that it is the sheriff's own action or inaction and his violation of his duty. So what is it that brings you to the point that I was asking, which is I didn't make it clear enough. Under Redmond, they did look to the sheriff's knowledge about overcrowded conditions and the like, so what's the comparable thing here? We have a declaration from the assistant sheriff about what their policy was. What is it about the sheriff that would bring him in? I think that goes back to all the complaints and grievances that Mr. Williams had filed with the board of supervisors and also the sheriff. I think that goes to notice. I'm saying assume that doesn't provide sufficient notice, then what is the basis for assigning liability under Redmond on the assumption? I'm not saying you don't prove it. I'm just saying assume we don't find that it's adequately established about actual notice. What's your theory as to how the sheriff then is brought in under Redmond just because on a direct liability claim? I believe that, I mean, like you said, assistant sheriff Trindo knew about this, and I think that he is directly reporting, and the sheriff is the supervisor of Mr. Trindo. So you're going to rely on notice? I think it's notice, and yes, I am. So you're not relying on the part of Redmond that says even if he didn't have notice, just by the nature of the responsibility? Oh, no. I am also relying on Redmond that even if he doesn't have notice, I think there is a lot of evidence in the record that shows that this is a widespread custom. It was repeated over a three-year period on three different stays involving multiple deputies. And so even without the notice, I think there's evidence that shows that this widespread pattern, you know, rises to the level of a custom, a practice of how the jail does things, and the law is clear, you know. And that's, I think, what I'm trying to say. Even if he didn't know about this defendant, he knew about problems with SVPs in the prison system? Yes.  Jail system. All right. Thank you, counsel. Thank you. Good morning. May it please the Court, my name is David Silberman. I'm a Deputy County Counsel for the County of San Mateo, and I represent the County of San Mateo. I'm going to address most of my comments just to sort of describing how this happened. But before I do that, I want to address a couple of the questions that were asked of counsel and a comment that was made about an e-mail and, in addition, about one moment. You're using up your time telling us what you're going to talk about. No, I appreciate that. So there was a discussion of this e-mail, and it appears on page 184 and 185 of the appellant's excerpts of record. And I believe that it's being mischaracterized, frankly. One of the questions that was addressed in the e-mail was, are they housed separately from inmates committed by criminal process? And this is on 185. Answer, yes. Let me just ask you about that. I mean, the Trindle declaration said it was their policy to house SVPs in the general prison population when there were too few SVPs to put them in Old McGuire. I mean, that's in the declaration that the county submitted. That's right. It also says in that declaration that when they do that, they don't let the SVPs attend religious services because it was too dangerous. They had to be segregated under California law. Why isn't that alone enough to survive summary judgment under our standard in Jones v. Blanas, which says it's deemed to be punishment if the SVPs get the same or less considerate treatment than the prisoners? Quite a few reasons. The first is what assistant sheriff, then assistant sheriff Trindle said and indicated in the, excuse me, indicated in the declaration was that they get less preferential treatment when they're in the general population. They still get more television access when they're in the general population. But they're deprived of the ability to go to religious, communal religious services. That actually has nothing to do with whether or not they are in Old McGuire or New McGuire. They're always, I mean, I wouldn't say deprived. But they're always getting less preferential treatment. Well, it's not preferential. No, Your Honor. No, not at all. It's not an issue of preferential treatment. And frankly, this is an issue of California law. And if Mr. Williams had wanted to challenge the constitutionality of California law, he certainly could have done that. But what California law does is it prohibits the county from mixing for extended periods of time civilly committed sexually violent predators with the general population. The reason why we don't allow the sexually violent predators to attend communal religious services is because the communal religious services have the criminal detainees in them. As Assistant Trindle indicated, if there were enough sexually violent predators to have a communal religious observance together, we would allow them to do that. But we don't have enough at any given time to do that. So what we do is we allow them access to a chaplain. All they need to do is contact our service bureau, and they will have a chaplain visit them. So the reason that we don't allow access to the communal services has absolutely nothing to do with the placement in the jail. It has to do with complying with California law. So where is that in the record? Where is that in the record? Well, it's in Assistant Sheriff Trindle's declaration, and it's argued in the briefs below. The reference was, I believe, to 4002 of the Penal Code, and it's discussed. It's actually one of the issues that was discussed below. So the one issue was this e-mail. I think the e-mail has been mischaracterized. The e-mail specifically indicates that they're treated differently. Sergeant Titus was asked on page 185, are they granted more privileges such as enlisting privileges? And the answer is yes. They are given more privileges. That's what he indicated. The other issue that I wanted to raise was this issue that is given a great deal of attention in the brief, which is, you know, did the district court err by refusing to consider? And I believe the comment a few moments ago was the district judge expressly indicated that they did not he did not consider the declaration. That is directly contrary to the record. Well, he, it's a mixed bag, but he keeps faulting the plaintiff in the case for not being more detailed and just making conclusory allegations. And if you look at the chronology attachments, there are quite a few specific details given throughout. It isn't just the two incidents that the district court chose to focus on. Well, I think that what the, I'm responding to the Did he or did he not is a summary judgment case. It's a pro se plaintiff. So the question is, is there evidence, was there materials that would answer, respond to some of the criticism of the district court? And I think that's a pretty close call. Well, Your Honor, frankly, I don't. And the reason why. Well, that's fine, but you're arguing.  I'm telling you what my reactions are. This goes to the core issue I want to argue, which is what the plaintiff was alleging in his complaint originally, and this was his theory, was that it was unconstitutional to confine him into the jail at all. That was his theory. And so that's what I was responding to when Is that correct or not? Why is that not correct under Jones? Why? Because Jones didn't hold that it was unconstitutional to house someone in a jail. In fact, it's expressly declined to reach that question. It held that open. It said where the individual is detained under conditions identical to, similar to, or more restrictive than. And so he makes an argument that in his declaration identifies incidents and situations where the conditions are identical, similar to, or more restrictive than those under which the criminal detainees are held. And I guess I was puzzled why that was not enough to survive summary judgment, since that's the stage we're on, resolving all the factual issues in favor of the nonmoving party. Well, I'm not sure I understand. The problem that the plaintiff had below was that he was he hadn't he didn't sue Assistant Sheriff Trindle. He didn't sue the watchman. Why did he? I mean, we have a lot of cases that say that a county's policies, I'm trying to remember the name, Gibson, Gibson v. County of Washoe, which says that where there is a failure to act, when the, it's obvious that there's a policy in place, which there is from Trindle's declaration, that the county can be sued for that failure. If the policy is unconstitutional and our policy is plainly constitutional. And that, and that. So he didn't have to name individual officers, which the district court seemed to think. I don't think that, I don't think that the district court was indicating that. I think the district court was indicating that because he didn't, because he did, and this is, this is core, that what the district court was indicating was that because he didn't sue individuals, all of the various allegations, detailed or not, in his case, they aren't discussed at all in any of his papers. But the fact that he didn't name any individuals, the fact that he detailed some allegations with respect to individuals, wasn't sufficient to defeat summary judgment. He had to do one of three things. He had to argue that our policy was unconstitutional, or he had to demonstrate that there was deficient training, or he had to show a custom or practice of not complying with our policy. And what he argued below, his argument was the policy of putting him in the jail is unconstitutional. And we argued that it wasn't, and we explained in the declaration why it was that we housed folks in the jail, that we didn't have any other options. That's why we focused our argument on that. And then when he filed his opposition, he completely changed his argument. Now it was, rather than it's that we have an unconstitutional policy to house them in the jail, now his argument was we didn't have a policy at all, which of course wasn't true. That's also, of course, what he argued when he originally filed his appellate briefs. This argument that is raised now, which is that you can derive a custom and practice of unconstitutional treatment due to looking at all of these instances that he alleged in his complaint, but never cited anywhere in his papers, never discussed anywhere in his papers, that's raised for the first time on the second set of appellate briefing. First time. I never had an opportunity to respond to it before, didn't have an opportunity to respond to it below. First time, absolutely first time. So, you know, ultimately, there are very good reasons why. I could have put in a declaration below that Sheriff Horsley had no idea that Mr. Williams existed or any of the conditions that he was alleging that he was in, but I didn't know that that was the theory that the plaintiff was asserting until these most recent appellate briefs were filed. Ultimately, I believe, Judge Ikuta, you asked a question about did Sheriff Horsley know? Is there any evidence that Sheriff Horsley knew? The answer is no. There's no evidence that he knew. But if you look at the inmate grievance form, they make reference to complaints that were made. My recollection is the record indicates that there was one inmate grievance form that was addressed to Sheriff Horsley. Sheriff Horsley doesn't get the inmate grievance forms, regardless of whether they're addressed to them. And you look at the inmate grievance forms, there's a process that is right on the watch commander and then ultimately the watch commander makes the final determination on those. There is not one lick of evidence that Sheriff Horsley, then Sheriff Horsley, had any knowledge whatsoever of anything that was going on with Mr. Williams. And really, the key takeaway here is that every allegation in the declaration, whether it was discussed or cited below or not, it's all about Mr. Williams. It's not about anybody else. There's no allegations. There's no evidence. There's no nothing that suggests that any of the conditions that Mr. Williams suggests that he was subjected to over time were in effect with respect to anybody other than Mr. Williams. And I'm not aware of any Ninth Circuit case that suggests that evidence of what established entity liability. Excuse me, counsel. The district court's order in denying summary or granting summary judgments faults him, Mr. Williams, for he says he contends that the named defendant's policies and failure to supervise resulted in the alleged unconstitutional acts. Are you saying you didn't have any opportunity to focus in on policy or that it was just individual acts that he was talking about? The district court seemed to understand that what he was trying to show was policy failure to supervise, failure to train. It's kind of obvious in a pro se complaint that that's the nature of the claim. Sure. I'm not no, Your Honor. I am not suggesting for a moment that I didn't realize this was a Monell claim. The only defendants were the sheriff and the county. I mean, I knew this was a Monell claim. I knew the issue of policy, custom, and training was an issue. Given Redmond and given Jones, why, when the court says that there's no, under 1983, there's no vicarious or superior liability, there is responsibility, at least under the Redmond case in California, that the sheriff has responsibilities for the policies in the jail. So if at this point on appeal, this isn't a policy case anymore. The arguments that the arguments that the appellant is making is that there's a custom and practice. We have a constitutional policy, and that's the policy that was outlined by assistant sheriff Trindle in his declaration. Trindle declaration. So we have a constitutional policy. What I believe the Ninth Circuit, the state of Ninth Circuit authority is, is if there's a policymaker who makes a policy that's unconstitutional, they're responsible for their unconstitutional policy. If someone who has the ability to change unconstitutional conditions is aware of the unconstitutional conditions and over a period of time does not make any efforts to remedy them, they can be responsible for that as well. But what we have here is we have a sheriff, well, now a member of the Board of Supervisors. He's no longer the sheriff. He hasn't been sheriff for years. But we had a sheriff at the time, and there is no evidence in the rec. We have a constitutional policy, and we have no evidence whatsoever that Sheriff Worsley had any knowledge of the allegations that Mr. Williams is making. And it's not like he didn't have an opportunity to develop that. I recognize that he is pro per, but he does have some responsibilities in advancing his case. He had my motion for summary judgment for five months. He could have very easily propounded a simple interrogatory to me, asking me whether the sheriff had any knowledge whatsoever of any of the allegations that he made. He didn't do that. It's not my responsibility, especially when I don't know that the argument is being made, to affirmatively disprove lack of knowledge on behalf of the sheriff. I was not aware that that was the argument that he was making in telepeel. Below, as I indicated, and, Judge Fischer, I was not suggesting that I did not know that policy was at issue. What I didn't know was that the theory was going to be that a series of unrelated acts over a period of time amounts to a custom and practice to mistreat predators, because what he argued below was that to house him in the jail at all was unconstitutional. And then later he argued that there was no policy. He did not argue that there was a custom and practice that could be determined by a series of unrelated acts. And I think you've made your point. I appreciate that. Thank you. We'll give you two minutes for rebuttal. I also recognize our questions took you over, so let's move to the final case. I appreciate the questions. Yeah. Your Honor, it's clear that Mr. Williams, as a pro se defender, and he's being faltered today for not, you know, making it clear to a trained attorney that he was raising, you know, claims under a policy theory, a custom theory, or a failure to train. And his complaint makes it very clear that all three theories of what he's proceeding as how he's proceeding. And even the appellees concede in their brief that Mr. Williams incorporated by reference also, you know, his complaint, his verified complaint and his declarations which set forth, you know, definitely a custom and a failure to train theory. His opposition also cites a lot of case law on all these three theories. So it's Mr. Williams did bring this to the Court and also to opposing parties' knowledge. Also in Gibson says that Mr. Williams is not required to name as defendants the specific deputies or staff that violated his rights. It's his prerogative not to do that. But, you know, he definitely alleged who they are in his declaration and his verified complaint and exhibits, that that's sufficient for a court to determine whether these individuals did violate his rights and whether the appellees are liable for that. Counsel also mentioned that this case isn't sufficient to show a widespread custom or practice because it's about one person. Well, there's – I took forward that for two reasons. One, it's not just about one person. There's a lot of claims about how civil – other civil detainees were treated or afforded the same or even worse treatment than the criminal inmates, such as the laundry exchanges, the pill calls, the less recreation and being locked in their cells for 23 or 24 hours a day. And also, Mr. Williams's claims, if I could finish my point. Mr. Williams's points also, it's not just one isolated incident. It goes, you know, it spans a 3-year period on three separate stays, and there are different deputies involved on each stay. I think this rises to – there's no case law that says that does not – that one person who has multiple experiences at the jail over time can't, you know, use all of these numerous instances to show a widespread custom or practice. Thank you, counsel. The case just heard will be submitted for decision. Thank you both for your arguments. Yes. I was going to say that. Oh, okay. No, I was going to say thank you for your representation pro bono on behalf of the Court.
judges: Thomas, Fisher, Ikuta